JUDGE HELLERSTEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
Alyssa Pinsker,

           Plaintiff,

- against -

City of New York and New York City Department of Education.

           Defendants.
-----------------------------------------------------------

11 CIV 3942

11 CV ( )( ) (AKH)(MHD)

ECF CASE

Complaint and Demand for Jury Trial

RECEIVED JUN 09 2011 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff, Alyssa Pinsker, by her attorney Michael G. O'Neill, states for her complaint against the defendants as follows:

### PRELIMINARY STATEMENT, JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this lawsuit by virtue of 28 U.S.C. §1331, 28 USC §1343, 28 U.S.C. §1367 and 42 USC § 12101 et seq.

2. Venue is proper pursuant to 28 U.S.C. §1391(b) in that the defendants "reside" in the Southern District of New York and the cause of action arose in the Southern District of New York.

### PARTIES

3. Plaintiff is an individual.

4. During all relevant times, plaintiff was disabled within the meaning of the Americans With Disabilities Act in that she suffers from a disorder that has been diagnosed variously as depression and bi-polar disease. This disorder significantly impairs one or more major life functions, including, but not limited to, thinking and sleeping.

5.      Defendant New York City Department of Education is a municipal corporation formed under the laws of the State of New York.

6.      Defendant City of New York is a municipality existing under the laws of the State of New York.

## FACTS

7.      During all times, plaintiff was fully certified by the State of New York as a High School Teacher and beginning in the 2007-2008 school year she was hired by defendants as a high school teacher in its Bayard Rustin Educational Complex (hereinafter referred to as the "school").

8.      Because of plaintiff's disability, she has at all times been prescribed a prescription medication named Quetiapine fumarate. One of the side effects of this medication is extreme drowsiness. Therefore, she is required to take the medication before she goes to bed. Even so, the side effect is not entirely worn off when she awakes, and on occasion the effect of the medication has caused her to be late.

9.      During the 2007-08 school year, plaintiff was late on average about three times per month. For the most part, she was late by only a few minutes and it did not interfere with her teaching schedule or otherwise prevent her from performing the essential functions of her job as a High School Teacher.

10.     Nevertheless, in about May, 2008, the school's administration expressed concern about the number of times that plaintiff had been late. At a meeting held on May 29, 2008, plaintiff explained that her lateness was caused by her disability and she provided the administration with a note from her physician. This fact was acknowledged in writing in a June

3, 2008 letter to plaintiff from Marita Franzman, the school's assistant principal. Plaintiff received no discipline or further criticism for lateness during the 2007-08 school year.

11. During the 2007-08 school year, all of plaintiff's observations were satisfactory, and her year end performance rating was satisfactory.

12. A new principal was put in charge of the school for the 2008-09 school year.

13. The new principal put into effect a new and arbitrary rule requiring teachers to be present in the school before the beginning of the school day. Even though plaintiff did not have any classroom duties for the first period, she was nonetheless required by the principal to be present at 8:00 a.m. Under plaintiff's schedule, the first period, which began after 8:00 a.m., was for class preparation.

14. In the 2008-09 school year, plaintiff was "late" a number of occasions, meaning that she arrived after 8:00 a.m., but before the first period started.

15. Despite the school having documentation that plaintiff's occasional lateness was related to her disability, plaintiff started to receive warning letters from the administration about being late. On September 11, 2008, a letter was put in plaintiff's file concerning her being late. This letter was written by the same Marita Franzman who had acknowledged plaintiff's medical condition earlier in the year. Plaintiff responded by reminding Ms. Franzman that she (the plaintiff) had a medical justification on file with the school.

16. Not only did this not interfere with either plaintiff's teaching or preparation time, but she was late fewer times in the 2008-09 school year than the previous year. In fact, plaintiff made every effort to avoid being late at all, and in December 2008 and January 2009 she was late only once each month.

3

17. Nevertheless, plaintiff was called into a disciplinary meeting on January 30, 2009 concerning absences and lateness. In that meeting plaintiff again raised the fact that, to the extent that her attendance was not satisfactory, it was as a result of a medical condition. The principal, Nancy Amling, refused to acknowledge that and denied that the school had any record of plaintiff's medical justification.

18. On February 4, 2009, plaintiff was advised that the local high school superintendent was considering her (the plaintiff's) discontinuance (i.e., termination) because of plaintiff's attendance record. About a week later plaintiff was discontinued effective March 9, 2009.

19. Before plaintiff's termination, she provided further medical documentation concerning the effect of her medication and its role in making her late occasionally.

20. Plaintiff denies that her attendance record was unsatisfactory. Plaintiff's absences were within defendants' guidelines and did not exceed the number of sick days to which she was permitted under their contract. From September 2008 to the end of January, 2009, plaintiff was "late" only 11 times. Plaintiff puts late into quotations, because plaintiff did not miss any teaching or preparation time, meaning that she was in school before the start of the first period.

21. Furthermore, plaintiff was treated disparately. Many teachers did not arrive at school before the 8:00 a.m. deadline imposed by the principal, and they were not disciplined. Furthermore, the principal singled plaintiff out for enforcement of an alleged rule against going across the street to buy a coffee during a free period. This was a routine practice universally engaged in by the vast majority of teachers, but plaintiff was written up for it. Plaintiff's

4

supervisors told her that they were not aware of any rule against that and that no other teachers were disciplined for the same conduct.

22. When the school was aware that plaintiff's lateness was caused by a medical condition, they were under a duty to engage in an interactive process to determine whether some accommodation could be given to her. Furthermore, by disciplining plaintiff for conduct caused by her disability, when that conduct did not prevent her from performing the essential functions of her job, the school discriminated against her on the basis of her disability.

23. On or about May 19, 2009, and within 90 days of plaintiff's termination, plaintiff duly filed a Notice of Claim against the City of New York and the New York City Department of Education.

24. At least thirty (30) days have elapsed since the demand or claim upon which this action is founded was presented to defendants for adjustment or payment thereof, and defendants have neglected and refused to make any adjustment or payment thereof.

25. On or about October 6, 2009, plaintiff filed timely charges of disability discrimination against defendants with the United States Equal Employment Opportunity Commission ("EEOC").

26. More than 180 days have passed since the filing of such disability discrimination charge. Plaintiff received a Right to Sue letter from the EEOC on or about March 18, 2011.

27. Plaintiff has satisfied the jurisdictional prerequisites and conditions precedent for bringing this lawsuit.

**First Claim**

28. Defendants violated the Americans With Disabilities Act ("ADA") by subjecting plaintiff to disparate terms and conditions of employment on the basis of her disability.

29. As a result of the defendants' violation of the ADA, plaintiff has suffered damages.

**Second Claim**

30. Defendants violated the ADA by failing to provide the plaintiff with a reasonable accommodation for her disability and by failing to engage in an interactive process with plaintiff for the purpose of assessing whether plaintiff's disability could be reasonably accommodated.

31. As a result of the defendants' violation of the ADA, plaintiff has suffered damages.

**Third Claim**

32. Defendants violated the ADA by terminating plaintiff's employment because of her disability.

33. As a result of defendants' violation of the ADA, plaintiff has suffered damages.

**Fourth Claim**

34. Defendants violated the New York City Human Rights Law by subjecting plaintiff to disparate terms and conditions of employment on the basis of her disability.

35. As a result of the defendants' violation of the New York City Human Rights Law, plaintiff has suffered damages.

### Fifth Claim

36. Defendants violated the New York City Human Rights Law by failing to provide the plaintiff with a reasonable accommodation for her disability and by failing to engage in an interactive process with plaintiff for the purpose of assessing whether plaintiff's disability could be reasonably accommodated.

37. As a result of the defendants' violation of the New York City Human Rights Law, plaintiff has suffered damages.

### Sixth Claim

38. Defendants violated the New York City Human Rights Law by terminating plaintiff's employment because of her disability.

39. As a result of defendants' violation of the New York City Human Rights Law, plaintiff has suffered damages.

**WHEREFORE**, plaintiff demands judgment for all relief permitted by law, including but not limited to:

    a. Awarding plaintiff a money judgment for her damages, including but not limited to lost wages, lost benefits, front pay, other economic damages, shame, humiliation, embarrassment and mental distress;

    b. Awarding plaintiff punitive damages;

    c. Awarding plaintiff a statutory attorneys' fee;

    d. Awarding prejudgment interest and costs;

e.  Granting such further and additional relief as the Court deems just and appropriate under the circumstances.

Dated: New York, New York
June 9, 2011

MICHAEL G. O'NEILL

By: Theresa B. Wade (TW0522)
Attorneys for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-099

## Jury Demand

Plaintiff demands trial by jury on all issues.

Dated: New York, New York
June 9, 2011

MICHAEL G. O'NEILL

By: Theresa B. Wade (TW0522)
Attorneys for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990